UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM MCGURK,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED FINANCIAL BANCORP, INC., WILLIAM H. W. CRAWFORD IV, ROBERT A. STEWART JR., RAYMOND H. LEFURGE JR., MICHAEL A. BARS, MICHAEL F. CROWLEY, KRISTEN A. JOHNSON, KEVIN E. ROSS, and PAULA A. AIELLO,<br><br>    Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff William McGurk ("Plaintiff"), by and through his undersigned counsel, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against United Financial Bancorp, Inc. ("United Financial" or the "Company") and the members of the Company's Board of Directors (referred to as the "Board" or the "Individual Defendants," and, together with United Financial, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger ("Proposed Transaction") under which United Financial will be acquired by People's United Financial, Inc. ("People's").

2. On July 15, 2019, United Financial and People's entered into an Agreement and Plan of Merger ("Merger Agreement"). Pursuant to the Merger Agreement, People's, the holding company for People's United Bank, N.A., will acquire United Financial, the holding company for United Bank.

3. Pursuant to the Merger Agreement, each issued and outstanding share of United Financial common stock will convert into the right to receive 0.875 shares of People's common stock (the "Merger Consideration"). Although the number of shares of People's common stock that United Financial shareholders will receive is fixed, the market value of the merger consideration will fluctuate with the market price of People's common stock and will not be known at the time United Financial shareholders vote to approve the merger agreement. Based on the closing price of People's common stock on the NASDAQ Global Select Market ("NASDAQ") on July 12, 2019, the last trading day before the public announcement of the parties entering into the Merger Agreement, the Merger Consideration represented approximately $14.74 in value for each share of United Financial common stock.

4. On September 6, 2019, in order to convince United Financial's public common stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading proxy statement (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. The Proxy contains materially incomplete and misleading information concerning (a) financial projections for the Company; (b) the valuation analyses prepared by Sandler O'Neill & Partners, L.P. ("Sandler O'Neill"), in support of its fairness opinion; (c) valuation analyses prepared by RP Financial ; and (d) the valuation analyses prepared by People's.

6. In addition, the Proxy disclosed that a special meeting of United Financial's stockholders will be held on October 22, 2019 to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so United Financial stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8. Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

10. Plaintiff is, and has been, at all times relevant times, a United Financial stockholder.

11. Defendant United Financial is a Connecticut corporation and maintains its principal executive offices at 225 Asylum Street, Hartford, Connecticut. United Financial's common stock is traded on the NASDAQ under the ticker symbol "UBNK."

12. Defendant William H. W. Crawford IV is Chief Executive Officer and a director of United Financial.

13. Defendant Robert A. Stewart Jr. is Chairman of the Board of United Financial.

14. Defendant Raymond H. Lefurge is Vice Chairman of the Board of United Financial.

15. Defendant Michael A. Bars is a director of United Financial.

16. Defendant Michael F. Crowley is a director of United Financial.

17. Defendant Kristen A. Johnson is a director of United Financial.

18. Defendant Kevin E. Ross is a director of United Financial.

19. Defendant Paula A. Aiello is a director of United Financial.

20. The defendants identified in paragraphs 12 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

21. United Financial is the holding company for United Bank, a full-service financial services firm offering a complete line of commercial, small business, wealth management and consumer banking products and services to customers throughout Connecticut, Massachusetts

and Rhode Island. United Bank is a financially strong, leading New England bank headquartered in Hartford, Connecticut with more than 50 branches in three states.

22. People's is the holder company for People's United Bank, N.A., a diversified, community-focused financial services company headquartered in the Northeast with more than $48 billion in assets. Founded in 1842, People's United Bank offers commercial and retail banking through a network of over 400 retail locations in Connecticut, New York, Massachusetts, Vermont, New Hampshire and Maine, as well as wealth management and insurance solutions.

**The Proposed Transaction**

23. On July 15, 2019, People's issued a press release announcing the Proposed Transaction. The press releases stated in relevant part:

> **People's United Financial To Acquire United Financial Bancorp, Inc.**
>
> **BRIDGEPORT, CT** – People's United Financial, Inc. (NASDAQ: PBCT), the holding company for People's United Bank, N.A., announced today an agreement to acquire United Financial Bancorp, Inc. (NASDAQ: UBNK), the holding company for United Bank, in a 100% stock transaction valued at approximately $759 million. Completion of the transaction is subject to customary closing conditions, including receipt of regulatory approvals and the approval of United Financial Bancorp, Inc. shareholders.
>
> "We are excited to welcome United Bank to People's United," said Jack Barnes, Chairman and CEO, People's United Financial. "With the fourth largest deposit market share in the combined Hartford and Springfield market, a complementary array of commercial and retail capabilities and a shared legacy of community giving, United will solidify our presence in the Central Connecticut market and strengthen our franchise in Western Massachusetts."
>
> "People's United Bank has long-been a premier brand in Connecticut that is committed to building meaningful relationships with its customers and communities," said William H.W. Crawford, President and CEO, United Financial Bancorp, Inc. "We are confident their broad array of products and services, in-market knowledge and the size and strength of their balance sheet will deliver enhanced value to our stakeholders."

>Established in 1858 and headquartered in Hartford CT, United Bank is a full service community financial services firm with $7.3 billion in assets. The Bank has nearly 60 branch locations concentrated in Central Connecticut and Western Massachusetts, offering customers commercial, small business, wealth management and consumer banking products and services.
>
>Barnes added, "We look forward to welcoming their well-established customer base and delivering to them our enhanced technology and digital capabilities, combined with our network of expert bankers."
>
>People's United expects the transaction to be $0.07 accretive to earnings per common share based on fully phased-in cost savings, with a tangible book value earn-back of approximately 2.3 years and an IRR of approximately 18%. The transaction is expected to close during the fourth quarter of 2019.
>
>Under the terms of the agreement, which has been approved by both companies' boards of directors, United Financial Bancorp, Inc. shareholders will receive 0.875 shares of People's United Financial stock for each United Financial Bancorp, Inc. share. The transaction is valued at $14.74 per United Financial Bancorp, Inc. share, based on the closing price of People's United's common stock on July 12, 2019.
>
>Keefe, Bruyette & Woods, Inc. served as financial advisor to People's United and Simpson Thacher & Bartlett LLP served as legal counsel to People's United.
>
>Sandler O'Neill & Partners served as financial advisor to United Financial Bancorp, Inc. and Sullivan & Cromwell LLP served as legal counsel to United Financial Bancorp, Inc.

24. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

25. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

**The Merger Agreement**

26. Section 6.11(a) of the Merger Agreement provides for a "no solicitation" clause that prevents United Financial from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

6

6.11 Acquisition Proposals.

(a)   The Company shall not, and shall cause its Subsidiaries and use its reasonable best efforts to cause its and their officers, directors, agents, advisors and representatives (collectively, "Representatives") not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate inquiries or proposals with respect to any Acquisition Proposal, (ii) engage or participate in any negotiations with any person concerning any Acquisition Proposal or (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with, any person relating to any Acquisition Proposal, except to (A) seek to clarify and understand the terms and conditions of any inquiry or proposal made by any person or (B) notify a person that has made or, to the knowledge of the Company, is considering making, an Acquisition Proposal, of the existence of the provisions of this Section 6.11(a); provided, that, prior to the approval of the Merger by the shareholders of the Company by the Requisite Company Vote, in the event the Company receives an unsolicited *bona fide* written Acquisition Proposal, it may, and may permit its Subsidiaries and its and its Subsidiaries' Representatives to, furnish or cause to be furnished nonpublic information or data and participate in such negotiations or discussions to the extent that the Board of Directors of the Company concludes in good faith (after receiving the advice of its outside counsel, and with respect to financial matters, its financial advisor) that failure to take such actions would reasonably be expected to violate its fiduciary duties under applicable law; provided, further, that, prior to providing any nonpublic information permitted to be provided pursuant to the foregoing proviso, the Company shall have entered into a confidentiality agreement with such third party on terms no less favorable to it than the Confidentiality Agreement, which confidentiality agreement shall not provide such person with any exclusive right to negotiate with the Company. The Company will, and will use its reasonable best efforts to cause its Representatives to, immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than Purchaser with respect to any Acquisition Proposal. The Company will promptly (and in any event within one business day) advise Purchaser following receipt of any Acquisition Proposal or any inquiry which could reasonably be expected to lead to an Acquisition Proposal, and the substance thereof (including the material terms and conditions of and the identity of the person making such inquiry or Acquisition Proposal, and copies of any proposed agreements, financing commitments, term sheets or letters of intent related thereto), and will keep Purchaser reasonably apprised on a current basis of any related developments, discussions and negotiations, including any amendments to or revisions of the material terms of such inquiry or Acquisition Proposal. As used in this Agreement, "Acquisition Proposal" shall mean, other than the transactions contemplated by this Agreement, any offer, proposal or inquiry relating to, or any third party indication of interest in, (i) any acquisition or purchase, direct or indirect, of 25% or more of the consolidated assets of the Company and its Subsidiaries or 25% or more of any class of equity or voting securities of the Company or its Subsidiaries whose assets, individually or in the

7

aggregate, constitute 25% or more of the consolidated assets of the Company, (ii) any tender offer (including a self-tender offer) or exchange offer that, if consummated, would result in such third party beneficially owning 25% or more of any class of equity or voting securities of the Company or its Subsidiaries whose assets, individually or in the aggregate, constitute 25% or more of the consolidated assets of the Company, or (iii) a merger, consolidation, share exchange, business combination, reorganization, recapitalization, liquidation, dissolution or other similar transaction involving the Company or its Subsidiaries whose assets, individually or in the aggregate, constitute 25% or more of the consolidated assets of the Company.

27. In addition, Section 8.2(c) of the Merger Agreement requires United Financial to pay a $28,278,000 "termination fee" to People's in the event this agreement is terminated by United Financial and improperly constrains United Financial from obtaining a superior offer.

**The Materially Incomplete and Misleading Proxy**

28. On September 6, 2019, Defendants filed an incomplete and misleading Proxy with the SEC and disseminated it to the Company's stockholders. The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 22, 2019.

29. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.

*Material Omissions Concerning Financial Projections*

30. The Proxy fails to disclose material information relating to the Company's internal projections provided by United Financial's management and relied on by Company's financial advisor Sandler O'Neill.

31. The Proxy provides that in connection with rendering its fairness opinion, Sandler O'Neill "used certain internal financial projections for United Financial for the years ending December 31, 2019 through December 31, 2021, as provided by the senior management of

8

United Financial, as well as a long-term earnings per share growth rate for United Financial for the years thereafter, as provided by the senior management of United Financial, and estimated dividends per share for United Financial for the years ending December 31, 2019 through December 31, 2023, as confirmed with the senior management of United Financial." Accordingly, the Proxy, should have, but fails to provide the vast majority of the information comprising the projections that United Financial management provided to Sandler O'Neill.

32. Specifically, the Proxy fails to disclose what (i) the "certain financial projections" for 2019-2021 are; (ii) how the "certain financial projections" were calculated; and (iii) how the "certain financial projections" were used in Sandler O'Neill's analysis.

33. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

*Material Omissions Concerning Sandler O'Neill's Financial Analyses*

34. The Proxy describes the fairness opinion of the Company's financial advisor, Sandler O'Neill, and the various valuation analyses performed in support of its opinion. However, the description of Sandler O'Neill's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, the Company's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Sandler O'Neill's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's common stockholders.

35. With respect to Sandler O'Neill's *Comparable Companies* analysis, the Proxy fails to disclose the individual multiples and metrics for the companies observed by Sandler O'Neill in the analysis. This information must be disclosed to make the Proxy not materially misleading to United Financial stockholders.

36. With respect to Sandler O'Neill's *Analysis of Selected Merger Transactions* the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Sandler O'Neill in the analysis. This information must be disclosed to make the Proxy not materially misleading to United Financial stockholders.

37. With respect to Sandler O'Neill's *Net Present Value Analyses* the Proxy fails to disclose the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0%. This information must be disclosed to make the Proxy not materially misleading to United Financial stockholders.

38. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Moreover, upon information and belief, the Proxy fails to set forth the internal financial assumptions and forecasts prepared by the management of People's which Sandler O'Neill used in reaching its opinion that the transaction was fair to United Financial

shareholders.  This information must be disclosed in order to make the Proxy not materially misleading.

40.     The omission of the above-referenced material information renders the Proxy false and misleading. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

*Material Omissions Concerning RP Financial Analyses*

41.     RP Financial was also retained by United Financial's Board to conduct certain financial analyses of the Company and was provided certain financial forecasts prepared by United Financial's management.

42.     The Proxy fails to disclose, however, which United Financial management forecasts were given to RP Financial and used as a basis for the creation of its standalone value analysis.  This information must be disclosed in order to make the Proxy not materially misleading.

43.     In addition, the Proxy fails to disclose the numerous estimates, assumptions and professional judgments which RP Financial used to prepare its standalone value planning scenario.  This information must be disclosed in order to make the Proxy not materially misleading.

44.     Furthermore, the Proxy does not set forth the reasons why RP Financial selected a 12 times earnings multiple or a 1.5 times multiple to tangible book value.  This information must be disclosed in order to make the Proxy not materially misleading.

45.     Also, RP Financial selected price multiples by observing a peer group of other companies, but the identity of this peer group of companies is not disclosed.  This information must be disclosed in order to make the Proxy not materially misleading.

46.     In its Value Comparison analysis, the Proxy states that RP Financial used United Financial management forecasts but the Proxy does not disclose which United Financial management forecasts were used. This information must be disclosed in order to make the Proxy not materially misleading.

## COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with shareholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50.     Defendants have issued the Proxy with the intention of soliciting support of

stockholders for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Proxy, which fails to provide critical information detailed above.

51. In so doing, Defendants made untrue statements of material fact and/or omitted material facts necessary to make the statements made not misleading. Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted material information but failed to disclose such information, in violation of Section 14(a).  Defendants therefore had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

52. The Proxy is materially misleading and omits material facts that are necessary to render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

53. Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

54. Defendants violated securities laws in preparing and reviewing the Proxy. Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

55. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other stockholders, each of whom will be deprived of their right to cast an

informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

56.     Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory

14

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

61. In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

64. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholder be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

(A) declaring that the Proxy is materially false and/or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: September 11, 2019

                              **GAINEY McKENNA & EGLESTON**

                              *s/ Thomas J. McKenna*
                              Thomas J. McKenna
                              Gregory M. Egleston
                              440 Park Avenue South
                              New York, NY 10016
                              Telephone: (212) 983-1300
                              Facsimile: (212) 983-0383
                              Email: tjmckenna@gme-law.com
                              Email: gegleston@gme-law.com

**MOORE KUEHN, PLLC**

Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*